UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| JOHN A. CHARRON<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>COUNTY OF YORK,<br>WILLIAM L. KING, JR.,<br>RACHEL A. HORNING<br>DARREN CYR<br>HEATH MAINS<br>STEVEN THISTLEWOOD<br>BILL VACHON<br>CHRISTOPHER MOSS<br>ERIC J. PILVELAIT<br>　　　　　Defendant. | CIVIL NO. 2:18-CV-_____ |

**Complaint - Jury Trial Demanded**

The plaintiff, JOHN A. CHARRON, states his cause of action against the defendants, for which he seeks a jury trial on all issues, as follows:

JURISDICTION

1.　This court has federal question jurisdiction under 28 USC § 1331 because this is an action under 42 USC §§ 1983 and 1985.

PARTIES

2.　The plaintiff, JOHN A. CHARRON, is an individual residing in the Town of Acton, County of York, State of Maine.

3. The defendant, COUNTY OF YORK, is a political subdivision, and specifically a county, in the State of Maine.

4. The defendant, WILLIAM L. KING, JR., is an individual who was acting at all material times as the Sheriff of said York County under color of state law. He is being sued in his individual and in his official capacity.

5. The defendant RACHEL A. HORNING is an individual who was acting at all material times as a deputy sheriff for said York County under color of state law. She is being sued in her individual and in her official capacity.

6. The defendant DARREN CYR is an individual who was acting at all material times as a deputy sheriff for said York County under color of state law. He is being sued in his individual and in his official capacity.

7. The defendant HEATH MAINS is an individual who was acting at all material times as a deputy sheriff for said York County under color of state law. He is being sued in his individual and in his official capacity.

8. The defendant STEVEN THISTLEWOOD is an individual who was acting at all material times as a deputy sheriff for said York County under color of state law. He is being sued in his individual and in his official capacity.

9. The defendant BILL VACHON is an individual who was acting at all material times as a deputy sheriff for said York County and as a court officer for

the York County Sheriff's Office under color of state law. He is being sued in his individual and in his official capacity.

10. The defendant CHRISTOPHER MOSS is an individual who was residing at all material times in the Town of Acton, County of York, State of Maine.

11. The defendant ERIC J. PILVELAIT is an individual who was residing at all material times in the Town of Acton, County of York, State of Maine.

12. Defendants Moss and Pilvelait were conspiring at all material times to falsely accuse the plaintiff of assaulting them with his plow truck for the purpose of having him arrested and charged by the other co-defendants, under color of state law, which occurred.

## FACTS

13. On March 8, 2016, defendants Moss and Pilvelait were harassing the plaintiff while traveling in their vehicle, a Pontiac Sunfire, near the plaintiff's home at 106 Langley Shores Drive in Acton, Maine.

14. Said harassment included yelling obscenities and threats and peeling out their tires in plaintiff's dirt driveway and on Langley Shores Drive with the intent to intimidate the plaintiff.

15. Minutes later, while the plaintiff was in his plow truck on Langley Shores Drive, the defendants intentionally and with malice crashed their vehicle into the rear of Charron's plow truck.

16. The force of the impact caused the defendant's Sunfire to slide under the rear bumper of Charron's plow truck, leaving marks on the hood of the Sunfire which clearly matched the underside of the plow truck's rear bumper.

17. After the collision, Charron drove away and hurried to his home at 106 Langley Shores Drive to get away from the defendants.

18. Defendants Moss and Pilvelait then drove their vehicle past Charron's house, yelling obscenities at him, and raced to the end of Langley Shores Drive, where they spun around and drove off the road into a ditch.

19. When the Sunfire came to a rest in the ditch, its tire tracks were clearly visible showing its path of travel off the road and into the ditch.

20. Defendants Moss and Pilvelait fled the scene because they had been drinking and just went off the road after colliding with the rear of Charron's plow truck.

21. While fleeing from the scene, defendants Moss and Pilvelait went back to Charron's property at 106 Langley Shores Drive and smashed the window of his plow truck to further harass and intimidate him.

22. Minutes later, defendant Horning made contact with defendant Moss after responding to a complaint from his mother asking for police assistance to remove her son from her home at 250 Buzzell Road in Acton.

23. In an attempt to deflect attention from himself as a suspect or perpetrator and to make himself look like a victim, while speaking with deputy Horning, defendant Moss falsely alleged that Charron rammed his plow truck into the Sunfire while defendants Moss and Pilvelait were inside the vehicle at the end of Pilvelait's driveway at 425 Buzzell Road in Acton.

24. As part of his false allegation, defendant Moss told deputy Horning that Charron had his plow raised when he rammed the Sunfire, such that the plow scraped over the hood of the Sunfire.

25. Moss further stated to deputy Horning that Charron then continued to push the Sunfire to the end of Langley Shores Drive, more than a quarter mile away, with Moss and Pilvelait in the vehicle.

26. Defendant Cyr met up with deputy Horning to assist while Horning was still at the Moss residence interviewing defendant Moss.

27. From there, the two deputies, Horning and Cyr, drove to the end of Langley Shores Drive where they met up with defendants Thistlewood and Mains, who arrived to assist.

28. The four deputies, Horning, Cyr, Thistlewood, and Mains, observed the Sunfire in the ditch.

29. It was apparent from the condition of the Sunfire and its tracks off the road that it had not been pushed with Charron's plow truck into the ditch as claimed by Moss.

30. It was equally apparent from the condition of the Sunfire that it had not been pushed by Charron's plow truck for a quarter mile down Langley Shores Drive as claimed by Moss.

31. Despite what should have been obvious to any critical observer, the four deputies proceeded to Charron's residence to arrest him without probable cause based on Moss's false allegations.

32. In the process, the deputies could clearly see that Charron's plow truck's window had been smashed, consistent with Charron's statement to the deputies before he was arrested that he saw Moss do this after Moss and Pilvelait rear ended him on Langley Shores Drive.

33. Charron was charged with Aggravated Reckless Conduct, Aggravated Assault, and Criminal Threatening with a Dangerous Weapon, all felonies, based on Moss's false allegations and the deputies' reports that uncritically accepted those allegations despite the obvious physical evidence showing that the allegations were false.

34. Charron was placed in a holding cell at the York County Jail where he was kept for many hours during which he suffered great discomfort. He was denied the opportunity to sleep and left to lay on freezing cold steel during this time as a form of illegal punishment.

35. Defendant Pilvelait concealed himself on the night in question from the deputies who had tried to make contact with him before arresting Charron.

36. Pilvelait did this because he was obviously intoxicated and he risked being arrested and charged with operating under the influence if he made contact with the deputies on the night in question.

37. The next day, March 9, 2016, when he was no longer intoxicated, Pilvelait met with deputy Horning and told her the same false story that Moss had made up the night before.

38. On March 9, 2016, based on the false allegations against Charron as reported by the four deputies, defendant King posted or allowed to be posted on his York County Sheriff's website the substance of the false allegations against Charron.

39. On the same day, Sheriff King informed the Portland Press Herald and other news media sources that Charron was arrested for "using his plow truck to ram a car with two teens in it."

40. In fact, it was known by King and his deputies that Moss was 27 years old and Pilvelait was 20 years old, based on their dates of birth, Moss's being September 24, 1988, and Pilvelait's being June 2, 1995.

41. King further stated to the Portland Press Herald and other media that Charron "drove straight into the front of a vehicle parked in his neighbor's driveway with the plow raised in the air."

42. King continued, "The blade slid up and over the car's front hood and broke the windshield." He added that this caused the air bags to deploy and both teens "suffered minor bumps and bruises."

43. Kings statements were reported by the Portland Press Herald and other media in their print and online sources, and those reports remain on the internet to this day.

44. The publication of the false allegations against Charron were defamatory per se and damaged his personal and professional reputation.

45. Charron suffered financial loss to his self-employment business as a tree removal expert as a result of the defamation.

46. The charges against Charron were all dismissed by the prosecution shortly before trial based upon the obvious physical evidence conclusively showing that the allegations against Charron were false and that, in fact, he was rear ended by Moss and Pilvelait as he had claimed from the beginning.

47. As a result of the actions of the defendants, Charron suffered humiliation, embarassment, anxiety, and severe emotional distress.

48. At all material times, Moss and Pilvelait acted with actual malice against Charron.

49. Although the physical evidence established unmistakably that the allegations of criminal conduct against Charron were false, and that his accusers were lying, the other defendants ignored that evidence and one or more of them actively concealed it.

50. Instead of securing the vehicle which Charron allegedly rammed, which contained a wealth of exculpatory evidence, the persons involved failed to take possession of it, failed to present it to the prosecutor, and failed to report its whereabouts when asked by the prosecutor on or about April 1, 2016, even though they knew that it was in the possession of Rankin Towing, which had towed it from the scene at their request.

51. Plaintiff provided timely notice of his claim against the County of York, the York County Sheriff, and the co-defendant sheriff deputies pursuant to the Maine Tort Claims Act, 14 MRSA § 8107.

52. Despite said notice, said defendants made no effort to correct the false information which they had reported about the plaintiff. As a result, said information is still present on the internet for all to see.

WHEREFORE, plaintiff prays for a judgment against the defendants based on all available legal theories including the following:

a. Against the defendants Moss and Pilvelait, plaintiff seeks compensatory damages of $100,000 and punitive damages of $150,000 for malicious prosecution, false arrest, false imprisonment, conspiracy to deprive him of his civil rights under 42 USC § 1985(3), defamation per se, intentional infliction of emotional distress, and for such further relief as is just and appropriate.

b. Against the defendants Horning, Cyr, Mains, Thistlewood, Vachon, King, and the County of York, plaintiff seeks compensatory damages of $100,000 and punitive damages of $150,000 for false arrest, false imprisonment, malicious prosecution, violation of his civil rights under 42 USC § 1983, defamation per se, intentional or negligent infliction of emotional distress, and for such further relief as is just and appropriate.

Dated: March 8, 2018            /s/Greg McCullough
                                Gregory O. McCullough, Maine Bar No. 7243
                                Attorney for Plaintiff, John A. Charron

SANFORD LAW OFFICES
1074 Main Street • P.O. Box 910
Sanford, ME 04073 • (207) 324-2812
fax 324-5571 • office@sanfordlaw.com
mobile 651-2770 • greg@sanfordlaw.com
www.sanfordlaw.com